STEVEN W. MYHRE
Acting United States Attorney
ROBERT A. KNIEF
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Telephone: (702) 388-6336
Email: Robert.Knief@usdoj.gov

*Counsel for Plaintiff United States*

FILED
2017 AUG 17 AM 9:03
U.S. MAGISTRATE JUDGE
BY_____

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> DIONICIO CRUZ-CORONEL, <br><br> Defendant. | Case No.: 2:17-mj-855-GWF <br><br> CRIMINAL COMPLAINT <br><br> **Count One**: <br> 21 U.S.C. §§ 841(a)(1), (b)(1)(A), Possession with Intent to Distribute Methamphetamine |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the Undersigned Complainant, being duly sworn, deposes and states:

### COUNT ONE
### (Possession with Intent to Distribute a Controlled Substance)

Beginning on a date unknown and continuing up to August 9, 2017, in the State and Federal District of Nevada,

**Dionicio CRUZ-Coronel,**

1

defendant herein, and others as yet unknown, did knowingly and intentionally combine, conspire, confederate and agree to distribute 500 grams or more a mixture and substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been employed by the Drug Enforcement Administration (DEA) as a Special Agent since January 1996. Prior to my employment with the DEA, I was an active duty military officer serving in the United States Army. In addition, I worked as an Intelligence Research Specialist for the Financial Crimes Enforcement Network (FinCEN) from 1992 to 1995 just prior to being hired by the DEA. I am currently assigned to the Las Vegas, Nevada (NV), District Office, Enforcement Group 3. My assignment also includes regular liaison with the North Las Vegas Police Department (NLVPD) and their narcotics team, the Regional Offender Drug Enforcement Operation (RODEO) Task Force

2. In connection with my DEA duties, I investigate criminal violations of the Controlled Substances Act. Through the DEA, I have received specialized training in the enforcement of federal narcotics laws. My training and experience has involved, among other things: (1) the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances and of the laundering and concealment of proceeds of drug trafficking; (2)

surveillance; (3) analysis of documentary and physical evidence; (4) the hand-to-hand purchase of controlled substances, including my direct involvement in drug purchases while acting in an undercover capacity; and (5) the execution of search warrants.

3. I have received training in investigations involving the interception of wire communications and complex conspiracy cases involving drug trafficking. Since January 1996, I have investigated numerous drug cases ranging in scope from street level distributors to multi-state and national, complex conspiracy cases. I have also worked in an undercover capacity on multiple occasions and conducted street-level purchases of methamphetamine, heroin, cocaine, and crack cocaine. Based on training and experience as a DEA Special Agent, I am familiar with the manner in which narcotics traffickers conduct their drug-related businesses including: the methods employed by dealers to import and distribute narcotics; their use of telephones in furtherance of their illegal activities; and their use of coded language to refer to narcotics, drug proceeds, counter-surveillance and other aspects of narcotics trafficking.

4. The following information contained within this criminal complaint is based upon my own participation in this investigation or was provided to me by other law enforcement personnel. All times are approximate.

5. On August 9, 2017 at approximately 5:00PM, RODEO Task Force Investigators responded to a traffic stop conducted by NLVPD patrol officers and officers of the NLVPD Problem-Solving Unit (PSU). In particular, NLVPD PSU officer L. Cooley (Badge #2147) conducted a traffic stop of a green Ford Expedition bearing Nevada license plate 504-MKM in the vicinity of 2337 Citroen Street, Las Vegas, Nevada. The vehicle had been parked illegally in front of a fire hydrant near 2315 Citroen Street, but drove

away upon seeing Officer Cooley's patrol vehicle. Before Officer Cooley located the vehicle on Citroen Street, he paced the vehicle traveling approximately 62 miles per hour (MPH) in a 45 MPH zone as it was eastbound on Sahara Avenue. After the Expedition stopped near 2337 Citroen Street, upon Officer Cooley activating his emergency lights, the driver and lone occupant exited the vehicle and began walking toward Officer Cooley, who told the driver to stand in front of his patrol car. Officer Cooley noticed that the driver placed his hands into his right front pants pocket as he (the driver) walked toward the patrol car. The driver subsequently presented a Mexico driver's license in the name of Dionicio CRUZ-Coronel, with a listed address of 6 California Way, Henderson, Nevada 89015.

6. Since CRUZ-Coronel had exited his vehicle before being instructed to do so, as well as reaching into his pants pocket, Officer Cooley asked CRUZ-Coronel if he had anything illegal, including weapons, on his person. CRUZ-Coronel replied he did not. When Officer Cooley asked if he could search him, CRUZ-Coronel replied: "Go ahead, check it out." PSU Sergeant D. Miller arrived on scene and assisted in the search of CRUZ-Coronel. During the "pat down" search, Officer Cooley located a small plastic baggie from the right front "coin" pocket of CRUZ-Coronel's jeans. Based on Officer Cooley's training and experience, he believed the substance contained within the baggie was consistent with the color and texture of cocaine. Upon finding the baggie with the white substance, Officer Cooley placed CRUZ-Coronel in handcuffs and advised him he was under arrest for speeding and for possession of a controlled substance.

7. NLVPD Officer J. Baldovinos arrived on scene and advised CRUZ-Coronel of his constitutional rights (Miranda Warnings) in Spanish. When asked about the

cocaine is his pocket, CRUZ-Coronel advised Officer Baldovinos he had placed the baggie inside his pants pocket several days prior but forgot it was there. CRUZ-Coronel also stated the Ford Expedition was registered to his father-in-law but he (CRUZ-Coronel) drove it every day. The substance inside the baggie was later field-tested and returned a positive indication for the presence of cocaine.

8. Officer Cooley and Officer S. Montgomery completed an inventory search of the Ford Expedition prior to the arrival of a tow truck. Officer Cooley located and seized a black plastic grocery bag behind the front passenger seat. The grocery bag held four (4) clear baggies, each containing a white, crystal-like substance that Officer Cooley believed to be methamphetamine. Officer Baldovinos asked CRUZ-Coronel about the substance inside the four bags but CRUZ-Coronel declined to answer and stated he wanted to speak to an attorney prior to answering any additional questions. Officer Cooley then advised CRUZ-Coronel he was also being charged with Trafficking a Controlled Substance (Methamphetamine) as well as driving without a valid driver's license. The crystal-like substance inside the bags was later field-tested by NLVPD personnel and returned a positive indication for the presence of methamphetamine.

9. CRUZ-Coronel was transported to the Las Vegas Detention Center (LVDC) and booked on State of Nevada drug trafficking charges. The bag of cocaine and bags of methamphetamine were subsequently tested for fingerprints by NLVPD Crime Scene Investigator (CSI) Lubking with negative results. Officer Cooley then booked the cocaine and methamphetamine into evidence at a NLVPD evidence vault for storage and safekeeping. The total weight of the cocaine was 1.18 gross grams; the total weight of the methamphetamine was 2,022 gross grams, or approximately 4.4 pounds.

10. Based on my training and experience, I believe there is probable cause to believe that Dionicio CRUZ-Coronel violated Title 21, United States Code, Section 841(a)(1), Possession with Intent to Distribute a Controlled Substance – Methamphetamine.

*[signature]*
John M. Kruthaupt, Special Agent
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me this 17th day of August 2017.

*[signature]*
UNITED STATES MAGISTRATE JUDGE